[Cite as *State v. Humphrey*, 2023-Ohio-1834.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. Nos. 29479; 29480 |
| | : | |
| v. | : | Trial Court Case Nos. 2020 CR 03714; |
| | : | 2020 CR 03896 |
| OCTAVIUS LAMONT HUMPHREY | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 2, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

OCTAVIUS LAMONT HUMPHREY, Appellant, Pro Se

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Octavius Lamont Humphrey appeals pro se from his conviction and sentence on three counts of murder, four counts of having a weapon while under disability, and three firearm specifications in two cases.[1]

---

[1] Humphrey also was found guilty of other charges that the trial court found subject to merger as allied offenses of similar import.

{¶ 2} Humphrey challenges the legal sufficiency and the manifest weight of the evidence to sustain some of his convictions. He also alleges that prosecutorial misconduct deprived him of a fair trial, that he was arrested unlawfully without a warrant and without probable cause, and that a search warrant for his home was issued without probable cause. Finally, he argues that he received constitutionally ineffective assistance of trial counsel.

{¶ 3} For the reasons set forth below, we conclude that the challenged convictions are supported by legally sufficient evidence and are not against the weight of the evidence. We also are unpersuaded by Humphrey's arguments about prosecutorial misconduct, the lawfulness of his arrest, the existence of probable cause for a search warrant, and ineffective assistance of counsel. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Couse of Proceedings

{¶ 4} In December 2020, a grand jury indicted Humphrey in Montgomery C.P. No. 2020 CR 3714 on six counts of having a weapon while under disability. Later that month, a grand jury indicted Humphrey in Montgomery C.P. No. 2020 CR 3896 on six counts of murder with firearm specifications, six counts of felonious assault with firearm specifications, and two counts of having a weapon while under disability. On Humphrey's motion, the trial court consolidated the two indictments.

{¶ 5} In April 2021, Humphrey filed a five-branch suppression motion. He later withdrew four of the branches, retaining only a challenge to the validity of a search warrant for his home and cell phones. The trial court overruled the suppression motion as well as

a motion to dismiss on speedy-trial grounds. During an April 2022 final pretrial conference, Humphrey waived his right to a jury trial on all charges in Case No. 2020 CR 3714 and on the two weapon-under-disability charges in Case No. 2020 CR 3896. The murder and felonious-assault charges in Case No. 2020 CR 3896 proceeded to trial before a jury.

{¶ 6} The charges in both cases stemmed from a triple homicide at 2654 North Gettysburg Avenue. At 5:48 p.m. on November 24, 2020, a police dispatcher received a 911 call from Dontay Alston, one of the victims. He told the dispatcher that he had been shot by "Mont." Law-enforcement officers responded and forced entry into the locked home. Once inside, they discovered the lifeless bodies of Alston and two other men, Michael Jackson and Justin Wilson. The three victims had been shot to death. Large quantities of marijuana and cash were found inside the home.

{¶ 7} Investigators from the Dayton police department and the Montgomery County sheriff's office immediately began seeking the identity of "Mont." Through their law-enforcement network they identified an individual named Monte Fleming as previously having visited 2654 North Gettysburg Avenue. Investigators also discovered that Monte Fleming was the cousin of victim Dontay Alston.

{¶ 8} Shortly after the shooting, victim Michael Jackson's fiancé, Dalisa Mitchell, was taken to the police department and interviewed. Mitchell explained to investigators that there was a "Monte" and a "Mont" and that they were different people.[2] Through their law-enforcement contacts, police also learned that the defendant, Octavius Lamont

---

[2] The trial transcript spells Fleming's first name alternatively as "Monte" and "Montay."

Humphrey, was known by the nickname "Mont." The investigators showed Mitchell two photo spreads, one containing Monte Fleming's picture and one containing the defendant's picture. Mitchell identified Fleming as someone she had seen at 2654 North Gettysburg Avenue, but she did not know his name. When shown the other photo spread, Mitchell identified the defendant as being "Mont." Mitchell testified at trial that she had known defendant Humphrey for approximately 15 years, that she always had known him as "Mont," and that other people also referred to him by that nickname. She testified that she had seen the defendant purchasing marijuana at 2654 North Gettysburg on at least two prior occasions. With regard to Monte Fleming, Mitchell confirmed that he was victim Dontay Alston's cousin. She did not know him very well and had seen him only once outside the house at 2654 North Gettysburg. She had never known him to use the nickname "Mont."

{¶ 9} After discovering that defendant Humphrey was "Mont" and that he had a connection to 2654 North Gettysburg, investigators learned that a black Buick car was registered to him and that 220 Morgan Avenue was a possible address for him. In the early morning hours of November 25, 2020, law-enforcement officers converged on 220 Morgan Avenue, which was approximately three miles away from the crime scene, and saw the black Buick parked outside. Police surrounded the house and began broadcasting for Humphrey to come out. Humphrey's girlfriend exited the house and confirmed Humphrey's presence. After approximately 45 minutes, Humphrey came outside and was arrested. He was in possession of a cell phone at that time.

{¶ 10} Police promptly obtained search warrants for both 2654 North Gettysburg

Avenue and 220 Morgan Avenue. Inside the Morgan Avenue home, they found a second cell phone belonging to Humphrey as well as three operable firearms, none of which were the murder weapon. They also found bags of marijuana and cash bundled with rubber bands. Inside the residence at North Gettysburg, police found bags and rubber bands similar to the ones found at Morgan Avenue. A firearm was located near victim Jackson's body, but it had not been fired. Police also found cell phones belonging to the three victims.

{¶ 11} Subsequent cell-phone analysis established that one of Humphrey's phones had been near 2654 North Gettysburg at the time of the murders. That phone was moving away from the crime scene at the time of victim Alston's 911 call. Humphrey also made a phone call from jail in which he admitted having been at 2654 North Gettysburg shortly before the shooting. During that call to his girlfriend, Humphrey denied having gone inside the house.

{¶ 12} In March 2022, a parole search resulted in the murder weapon being found in the home of an individual named William Clark. Investigators ultimately determined that Clark had not been involved in the shootings and that the gun possibly had been brought into his home by a female, homeless drug addict.

{¶ 13} Following several days of testimony, the jury found Humphrey guilty on all six counts of murder and all six counts of felonious assault as well as accompanying firearm specifications. The trial court separately found him guilty on all weapon-under-disability charges in Case No. 2020 CR 3714 and both of those charges in Case No. 2020 CR 3896.

{¶ 14} After merging allied offenses, the trial court sentenced Humphrey on three counts of having a weapon while under disability in Case No. 2020 CR 3714. It imposed a three-year prison term on each count and ordered those terms to be served consecutively. In Case No. 2020 CR 3896, the trial court sentenced Humphrey on three counts of murder, three firearm specifications, and one count of having a weapon while under disability. It imposed prison terms of 15 years to life on each of the three counts of murder, three years on each of the three firearm specifications, and three years for having a weapon while under disability. The trial court ordered these sentences to be served consecutively. Finally, the trial court ordered the sentences in both cases to be served consecutively. Humphrey has appealed pro se in both cases, advancing six assignments of error.

## II. Sufficiency and Weight of the Evidence

{¶ 15} In his first two assignments of error, Humphrey challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions in Case No. 2020 CR 3896.

{¶ 16} With regard to legal sufficiency, Humphrey contends the record contains no evidence linking him to any of the crimes committed inside the residence at 2654 North Gettysburg. He claims the State did not connect him to the murder weapon, which was found more than a year later in someone else's home. He also points out the absence of DNA evidence or surveillance footage linking him to the crime scene. Although police found cash and marijuana in his home at 220 Morgan Avenue, Humphrey contends the denominations were not "exactly the same" as the cash found at the crime scene. He also

argues that the similarity of marijuana bags and rubber bands found at his home and at the crime scene was not particularly significant. Finally, he notes that cell phone records were not precise enough to place him at the crime scene at the time of the shootings.

{¶ 17} With regard to the manifest weight of the evidence, Humphrey reiterates the foregoing arguments. He also asserts that he was friends with victim Justin Wilson and that the State presented no evidence explaining why he would kill his friend. Humphrey points out that significant quantities of cash and marijuana were left at the crime scene, suggesting that the motive for the shootings was not "greed." He also cites Dalisa Mitchell's testimony that she knew a few people who use the nickname "Mont."

{¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 20} With the foregoing standards in mind, we conclude that Humphrey's convictions in Case No. 2020 CR 3896 were based on legally sufficient evidence and were not against the weight of the evidence. The primary issue in the case was the identity of the shooter. Victim Alston told the 911 dispatcher that he had been shot by "Mont." Investigators promptly identified two potential suspects, Monte Fleming and defendant Octavius Lamont Humphrey. However, Dalisa Mitchell advised them that the defendant was the only one of these two men to be known by the nickname "Mont." She also testified that the defendant previously had purchased marijuana from 2654 North Gettysburg. In addition, cell-phone records revealed that one of Humphrey's phones was in the vicinity of 2654 North Gettysburg minutes before the shooting, and Humphrey himself admitted in a jail telephone call that he had been at 2654 North Gettysburg shortly before the murders. Finally, the State presented evidence that similar bags of drugs and bands of cash were found at the crime scene and at Humphrey's house. This evidence, if believed, was legally sufficient to prove Humphrey's guilt beyond a reasonable doubt.

{¶ 21} Humphrey's convictions also were not against the weight of the evidence. The evidence linking him to the crimes included victim Alston's identification of the shooter as "Mont" and Mitchell's identification of Humphrey as "Mont." The accuracy of this identification was corroborated by the cell phone records, Humphrey's jailhouse phone

call, and, to some extent, the presence of similar-appearing bags of marijuana and bundles of cash at the crime scene and in Humphrey's house. The existence of DNA evidence, surveillance footage, or evidence directly linking Humphrey to the murder weapon would have made the State's case stronger, of course, but the absence of such evidence did not make his convictions against the weight of the evidence that was presented. Dalisa Mitchell's characterization of Humphrey and victim Justin Wilson as "friends" and the presence of drugs and cash left at the crime scene were relevant considerations for the jury, but these facts also fail to persuade us that the convictions were contrary to the weight of the evidence.

{¶ 22} Mitchell's statement that she "probably" knew a few people called "Mont" likewise fails to establish that Humphrey's convictions were against the weight of the evidence. As set forth above, Mitchell initially explained that she had known defendant Humphrey by the nickname "Mont" for 15 years and that victim Alston's cousin Monte Fleming did not use that nickname. The following exchange then occurred between the prosecutor and Mitchell regarding Humphrey's being "Mont":

Q: Okay. You only know—how many Monts do you know?

A: I probably know a few, but—

Q: In this particular case.

A: In this situation I know just him.

Trial Transcript Vol. III at 465-466.

{¶ 23} Mitchell's testimony that she probably knew multiple people called "Mont" may have surprised the prosecutor, and we are uncertain what Mitchell meant when she clarified that she knew only Humphrey by that nickname "[i]n this situation." She may have

meant that Humphrey was the only "Mont" she knew who had any plausible connection to the residence at 2654 North Gettysburg. In any event, the record contains no evidence of anyone known as "Mont" other than Humphrey being in the vicinity of the crime scene minutes before the shooting. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering witness credibility, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence did not weigh heavily against Humphrey's convictions in Case No. 2020 CR 3896. For the foregoing reasons, we overrule the first and second assignments of error.

### III. Prosecutorial Misconduct

{¶ 24} In his third assignment of error, Humphrey alleges that prosecutorial misconduct deprived him of a fair trial. His argument is that police tampered with evidence by moving items inside his home and at the crime scene and that the prosecutor introduced pictures of those items at trial.

{¶ 25} The test for prosecutorial misconduct is whether the challenged actions were improper, and if so, whether they deprived the defendant of a fair trial. *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 9 (2d Dist.). The question is whether the misconduct so infected the trial with unfairness that the convictions came in violation of the defendant's right to due process. *Id.*

{¶ 26} We see no prosecutorial misconduct here. As the State correctly notes, police officer Stephen Hargraves testified at trial and essentially admitted what Humphrey alleges. Hargraves explained that items sometimes are moved, intentionally or otherwise, when crime-scene technicians perform their work. He testified that items may be moved

so a placard can be placed next to them. Other times they may be moved for purposes of inventorying or obtaining better photographs. He also acknowledged that items sometimes may be moved inadvertently.

{¶ 27} Humphrey has failed to explain how incidental movement of the items at issue—which included things such as marijuana, baggies, slippers, a pop bottle, a suitcase, and items on a coffee table and on a bed—had any possible effect on the outcome of his case. We do not see how knowing the precise original location of items such as these could have led the investigation in a different direction or how the items being moved by evidence technicians could have prejudiced him. Moreover, given that Hargraves testified and acknowledged the movement Humphrey alleges, the jury was able to consider that fact when evaluating the evidence. Under these circumstances, we see no misconduct and no prejudice to Humphrey. The third assignment of error is overruled.

## IV. Legality of Arrest

{¶ 28} In his fourth assignment of error, Humphrey challenges the legality of his arrest outside his home. He argues that police lacked probable cause to make the arrest and that he later made unspecified incriminating statements during a post-arrest interrogation. Although he does not say so explicitly, Humphrey appears to be making a suppression argument based on the alleged illegality of his arrest.

{¶ 29} In response, the State notes that Humphrey withdrew the branch of his pretrial suppression motion challenging the legality of his arrest and, therefore, that we are limited to plain-error review. The State argues that no error exists, plain or otherwise,

because police possessed probable cause to arrest Humphrey outside his home.

{¶ 30} Upon review, we agree with the State. "[A] warrantless arrest based upon probable cause and occurring in a public place does not, in general, violate the Fourth Amendment." *State v. Brown*, 2d Dist. Montgomery No. 26219, 2015-Ohio-1163, ¶ 12. The existence of probable cause to arrest turns on whether reasonably reliable facts and circumstances within the arresting officers' knowledge were sufficient to cause a prudent man to believe the suspect had committed or was committing a crime. *Id.*

{¶ 31} Here one of the victims made a 911 call and reported that he had been shot by "Mont." Upon forcing entry into the home at 2654 North Gettysburg, police found three victims who had been shot to death. Through their own investigation, law-enforcement officers quickly learned that the "Mont" referenced by the 911 caller could be defendant Humphrey. They then spoke to Dalisa Mitchell, the fiancé of one of the victims. She confirmed that she had known Humphrey as "Mont" for 15 years and that he previously had visited 2654 North Gettysburg to purchase marijuana. She also told investigators that their other potential suspect, Monte Fleming, did not go by the nickname "Mont." Police then confirmed Humphrey's address and observed his car parked outside his house. They took him into custody when he came outside.

{¶ 32} Collectively, the information reported by the dying 911 caller and the information provided by Mitchell gave police probable cause to believe that Humphrey was the shooter. At a minimum, it is not plainly erroneous to reach such a conclusion. Therefore, the warrantless arrest did not violate the Fourth Amendment. Humphrey's fourth assignment of error is overruled.

## V. Validity of Search Warrant

{¶ 33} In his fifth assignment of error, Humphrey challenges the issuance of a search warrant for 220 Morgan Avenue. Specifically, he contends a search-warrant affidavit failed to establish probable cause that things mentioned in the affidavit would be found in his home.

{¶ 34} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman*, 114 Ohio App.3d 327, 332-333, 683 N.E.2d 100 (2d Dist.1996).

{¶ 35} " '[T]he duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for * * * conclud[ing]" that probable cause existed.' " *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13, quoting *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In doing so, "reviewing courts must examine the totality of the circumstances." *Id.*, citing *Gates* at 238. " '[T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.' " *Id.* at ¶ 14, quoting *George* at

paragraph two of the syllabus.

{¶ 36} The search warrant for 220 Morgan Avenue described the evidence to be seized as follows:

Any Blood, Hair, Fiber, Clothing, or other Trace Evidence, including but not limited to Fingerprints and DNA. Unknown handgun and any other firearms or ammunition. Any writings, photographs or mail matter. Any documents or items showing possessory interest in 220 Morgan Ave, Dayton, Ohio. The person of Octavius Humphrey Black Male [date of birth and Social Security number omitted]. Any illegal narcotics inside the residence. Black 2008 Buick 4 door sedan Ohio Plate JAW3018 VIN ending in 3512. Cash.

{¶ 37} Regarding probable cause to believe the foregoing things would be found inside Humphrey's residence, the trial court noted that substantially similar facts were recited in warrant affidavits for 220 Morgan Avenue, 2654 North Gettysburg Avenue, Humphrey's cell phones, and his car. The trial court explained:

The affidavits for the warrants are virtually identical: each 1) describing the time and location of the homicides; 2) stating that Mr. Humphrey was positively identified by Ms. Mitchell as "Mont"; 3) stating a male 911 caller reported that "Mont" shot them; 4) informing the reviewing Judge that "Mont" was a regular participant in splitting up the drugs and that a shipment of drugs was delivered to the Residence on November 24, 2020; 5) providing the three victims' locations within the Residence and stating they'd been shot; 6) setting forth the Officers' observations from within the

Residence including the presence of over $24,000 in cash, spent .45 caliber bullets, cellular telephones and over 6 pounds of marijuana and 7) detailing that a public records search indicated Mr. Humphrey had a 2008 Buick 4 door sedan with a license plate number of JAW3018 registered in his name, and that in the early morning hours of November 25, 2020 Officers drove by his Home at 220 Morgan Avenue and observed the car parked in the driveway.

*Id.* at 9-10.

{¶ 38} Considering the totality of the circumstances detailed in the warrant affidavits, the trial court found probable cause to believe the evidence sought would be found in the locations to be searched. The trial court also found that the affidavits and warrants were not overbroad, that the items sought were described with sufficient particularity, and that the facts contained in the affidavits were not stale.

{¶ 39} With regard to the warrant for 220 Morgan Avenue, Humphrey contends "the front of the search warrant does not state a name that they're looking for at 220 Morgan Avenue nor does the warrant support probable cause or a nexus that links Mr. Humphrey or any property from 2654 N. Gettysburg Ave to 220 Morgan Ave." He claims the supporting affidavit did not support a finding that evidence of a crime would be found inside his residence.

{¶ 40} Upon review, we find Humphrey's arguments to be unpersuasive. The search warrant did identify Humphrey as a person who might be found inside 220 Morgan Avenue. In any event, it appears that he exited the house and was taken into custody prior to execution of the warrant.

{¶ 41} With regard to probable cause, the trial court did not err in its ruling. The affidavit supported a finding that Humphrey was the suspected shooter in a triple homicide at 2654 North Gettysburg, the location of drug activity involving Humphrey and others. The affidavit noted the 911 caller's reference to the shooter as "Mont." Based on information obtained from Dalisa Mitchell, the affidavit stated that drugs had been transported to the North Gettysburg address on November 23, 2020, to be divided for sale. According to the affidavit, Mitchell told police that Humphrey, who she knew as "Mont," often was present at 2654 North Gettysburg "during the breakdown of drugs." The affidavit also stated that Mitchell denied knowing anyone other than Humphrey who used the nickname "Mont." Finally, the affidavit stated that police had found more than $24,000 in cash, more than six pounds of marijuana, and spent .45 caliber shell casings at the crime scene. These facts established a fair probability that evidence related to the murders or contraband such a drugs, cash, firearms, and other items would be found in Humphrey's home. The trial court certainly had a "substantial basis" for finding that probable cause existed. Accordingly, the fifth assignment of error is overruled.

### VI. Ineffective Assistance of Counsel

{¶ 42} In his sixth assignment of error, Humphrey alleges that his trial counsel provided constitutionally ineffective assistance. Without elaboration, he identifies 10 ways in which he believes his attorney failed to represent him effectively.

{¶ 43} To succeed on an ineffective-assistance claim, a defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 44} When reviewing ineffective-assistance claims, " 'we will not second-guess trial strategy decisions, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' " *State v. English*, 2d Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10, quoting *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998), quoting *Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy[.]' " *State v. Collins*, 2d Dist. Miami No. 2010-CA-22, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2d Dist. Clark No. 2009-CA-110, 2011-Ohio-3420, ¶ 121. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

### 1. Failure to file suppression motion

{¶ 45} Humphrey first alleges ineffective assistance of counsel based on his attorney's failure to file a motion to suppress evidence collected from 220 Morgan Avenue. This argument lacks merit because his attorney did seek suppression of the items found inside his home. In the sole branch of the suppression motion that was not withdrawn, counsel unsuccessfully challenged the adequacy of the search warrant for 220 Morgan Avenue. Humphrey has not identified anything else that his attorney should have done.

### 2. Failure to allow Humphrey to call witnesses or to testify at trial

{¶ 46} Humphrey contends his attorney provided ineffective assistance by not allowing him to call witnesses or to testify on his own behalf. But Humphrey has not identified any particular witnesses that should have been called. Nor does the record reflect what testimony absent witnesses would have provided or how such testimony would have affected the outcome. As for Humphrey's failure testify, the record reflects that he made that decision himself. Under these circumstances, he cannot establish ineffective assistance of counsel.

### 3. Failure to "state case law" in speedy-trial motion

{¶ 47} Humphrey alleges ineffective assistance of counsel based on his attorney's failure to recite case law in an unsuccessful motion to dismiss on speedy-trial grounds. As the State notes, however, defense counsel did cite the applicable statute and set forth a timeline of events with tolling arguments. Therefore, the pertinent issues were properly presented to the trial court. Humphrey has failed to demonstrate that defense counsel's addition of a case-law citation would have changed the trial court's ruling.

**4. Stipulation to 911 call**

{¶ 48} Humphrey contends his attorney provided ineffective assistance by stipulating that it was victim Alston's voice on the 911 call. Prior to the stipulation, however, the State represented that Dalisa Mitchell knew Alston and was prepared to identify his voice on the call recording. We note too that police found the cell phone used to make the 911 call in Alston's hand when they entered the house. Under these circumstances, we see no ineffective assistance of counsel arising from the stipulation.

**5. Failure to identify and call confidential informant as a witness**

{¶ 49} Humphrey challenges his attorney's failure to seek the identity of a confidential informant or to call the informant as a witness. As the State notes, however, defense counsel did seek the informant's identity. The trial court overruled the motion. As a result, defense counsel could not call the informant as a witness. In any event, Humphrey also cannot establish prejudice because we have no idea what testimony the informant might have provided.

**6. Allowing the prosecutor to use illegally-obtained evidence**

{¶ 50} Humphrey contends his attorney improperly allowed the prosecutor to use illegally-obtained evidence to suggest robbery as a motive for the shooting. But Humphrey has not identified any illegally-obtained evidence. Humphrey had no standing to challenge the search that led to the discovery of evidence inside 2654 North Gettysburg. With regard to the search of Humphrey's home at 220 Morgan Avenue, we have overruled his assignment of error challenging the validity of a search warrant for that location. Accordingly, defense counsel did not provide ineffective assistance by "allowing" the

prosecutor to use any evidence.

### 7. Failure to subpoena a female

{¶ 51} Humphrey alleges ineffective assistance of counsel based on his attorney's failure to subpoena a "female" referenced in an incident report. For its part, the State suggests that the unidentified female was Dalisa Mitchell, who did testify at trial. But if it was not Mitchell, Humphrey has not identified the female or explained how her absence prejudiced him. Indeed, Humphrey cannot demonstrate prejudice on this record because we have no way of knowing what testimony the unnamed female might have provided.

### 8. Failure to subpoena a deputy

{¶ 52} Humphrey also challenges his attorney's failure to subpoena sheriff's deputy Benjamin Hale. He asserts that Hale was the first law-enforcement officer who encountered Mitchell at the crime scene. The State responds that Humphrey's claim about Hale encountering Mitchell is unsupported by the record because Hale did not testify at trial. Regardless, Humphrey once again cannot demonstrate prejudice because we do not know what testimony Hale might have provided if he had been called as a witness.

### 9. Failure to raise argument on motion to suppress

{¶ 53} Humphrey alleges ineffective assistance of counsel based on his attorney's failure to raise an argument concerning a lack of probable cause for a search warrant at 220 Morgan Avenue. As explained above, however, defense counsel did seek suppression of the evidence found inside 220 Morgan Avenue. Counsel argued a lack of probable cause, and the trial court overruled the motion.

## 10. Failure to address requested information

{¶ 54} In a final argument, Humphrey contends his attorney "failed to address the information that [he] asked for under the compulsory process clause so that [he] would have had a meaningful opportunity to present a case in his favor that equal matches that of the prosecution."

{¶ 55} In support of his argument, Humphrey cites pages 71 through 77 of his trial transcript. On those pages, Humphrey engaged in a discussion with the trial court during which he aired grievances. He began his argument as follows:

> Under the depository process clause of Ohio state's 15 states was slightly irritations and work that puts emphasis on but not limited to the (indiscernible) of defense witnesses. The depository (phonetic) process clause defers in one significant respect from the confrontation clause and other procedural guarantees of the Sixth Amendment (indiscernible), but not unlimited. The right to be informed of the charges against him to receive a speedy trial his desire.

Trial Tr. Vol. I at 71-72.

{¶ 56} Humphrey and the trial court proceeded to address various issues including speedy trial, his indictment, a motion to dismiss, a motion to suppress, subpoenaing witnesses, compulsory process, *Brady* violations, a confidential informant, and the confrontation clause. Although Humphrey's particular concern on appeal is unclear, it appears that he may be complaining about never learning the identity of the confidential informant. As noted above, however, defense counsel did seek that information. The trial court simply overruled the motion. Under these circumstances, we see no ineffective

assistance of counsel. The sixth assignment of error is overruled.

## VII. Conclusion

**{¶ 57}** Having overruled each of Humphrey's assignments of error, we affirm the judgments of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.