[Cite as *State v. Weprin*, 2024-Ohio-2469.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29979 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01579 |
| | : | |
| JASON WEPRIN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 28, 2024

. . . . . . . . . . .

CHRISTOPHER BAZELEY, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Jason Weprin appeals from his conviction, following pleas of no contest, to rape, gross sexual imposition, and disseminating matter harmful to juveniles. For the reasons that follow, we conclude that the trial court did not err in overruling Weprin's motion to suppress, but that the court did err in failing to advise Weprin at disposition

pursuant to the Reagan Tokes Act and regarding post-release control. The trial court's judgment will be reversed in part and remanded for resentencing consistent with this opinion. In all other respects, the judgment of the trial court will be affirmed.

**Facts and Procedural History**

{¶ 2} On June 17, 2022, Weprin was indicted on 22 counts: 16 counts of rape, three counts of gross sexual imposition, two counts of disseminating matter harmful to juveniles, and one count of public indecency. All of the indicted counts of rape and gross sexual imposition included specifications that the victim was less and 13 or less than 10 years old. Weprin pled not guilty.

{¶ 3} On December 8, 2022, Weprin filed a motion to suppress any evidence obtained during the execution of a search warrant at his home and any evidence subsequently obtained as fruit of the poisonous tree. Weprin asserted that the search warrant had been insufficient to establish probable cause, had been based on stale information, and had been premised upon an affidavit containing material omissions, rendering it misleading and not subject to the good faith exception. The State opposed the motion to suppress.

{¶ 4} A hearing on the motion to suppress was held on April 14, 2023. On May 22, 2023, the court overruled Weprin's motion to suppress. The court found that there was no evidence that the search warrant affiant, Detective Isaiah Kellar, had made an effort to exclude critical information from the search warrant affidavit, as Weprin had alleged. The court also found that the time between the filing of the affidavit and the statements on which it relied, which was five months, did "not equate to staleness" under the facts of

this case.

{¶ 5} On October 6, 2023, a bill of information was filed for one count of rape, which did not contain any specification as to the age of the child; the same day, Weprin entered no contest pleas to the count of rape in the bill of information, one count gross sexual imposition, and one count of disseminating material harmful to juveniles. The trial court found him guilty and imposed an indefinite sentence of 11 to 16.5 for rape, two years for gross sexual imposition, and 12 months for disseminating matter harmful to juveniles. The court ordered the terms to be served concurrently and designated Weprin a Tier II and Tier III sex offender.

{¶ 6} Weprin raises three assignments of error. His first assignment of error states:

THE TRIAL COURT ERRED WHEN IT OVERRULED WEPRIN'S MOTION TO SUPPESS.

{¶ 7} According to Weprin, in his motion he had argued that Detective Kellar *recklessly* omitted information from the search warrant affidavit, not that he had intentionally done so. Weprin asserts that the trial court failed to rule on the argument about reckless omission of information, noting the "significant distinction" between intentional and reckless conduct. According to Weprin, Kellar failed to include that the victim had recanted prior rape allegations, and knowledge that an accuser had recanted an allegation or had a history of recanting similar allegations was "critical information" to a judge's determination of whether the victim's statements could be relied upon to support a finding of probable cause.

{¶ 8} Weprin further asserts, as he did in the trial court, that the information used to obtain the warrant was stale and therefore not useful in establishing probable cause. According to Weprin, the victim's statements that evidence remained in the home, upon which the affidavit relied, constituted stale information because she had been removed from the home on September 2021 and had not returned prior to the execution of the warrant five months later. Weprin argues that nothing in the affidavit suggested that the victim had any knowledge that the items sought remained in the home.

{¶ 9} The State responds that Kellar's affidavit did not contain material omissions with the intent to mislead the court and that the affidavit was not based upon stale information. It also asserts that Detective Kellar acted in good faith reliance on the warrant's validity.

{¶ 10} In reply, Weprin argues that the fact that the victim had previously recanted similar allegations against him was clearly material and undermined all of the allegations in the affidavit, and the omission of this information "amount[ed] to a reckless disregard of the influence" it would have had on the judge.

Suppression Hearing Testimony

{¶ 11} At the suppression hearing, Detective Kellar of the Montgomery County Sheriff's Office testified that on September 22, 2021, he was present for the forensic interview of the victim at CARE House. Kellar had been assigned to the case after the victim made a disclosure about Weprin to classmates at school the previous day. The interview was conducted by Jennifer Nicely. Kellar subsequently supplied the affidavit for the search warrant that was issued on February 11, 2022. According to Kellar, he

had had no discussion with the court of matters beyond the contents of the affidavit. He testified that he had previously been assigned to a case involving similar allegations by the victim against Weprin in November 2019.

{¶ 12} Kellar testified as follows about the September 22, 2021 forensic interview:

Q [by defense counsel]. So during this interview, the alleged victim was asked essentially why she has told people at school on two separate occasions that [Weprin] had raped her, and the alleged victim stated that she forgot to tell her friends that it was not true, correct?

A. Yes, it does say that, yes.

Q. And that she wanted attention, correct?

A. Yes.

* * *

Q. None of these statements that these things weren't true, that she said them because she wanted attention; none of these things were included in the affidavit, correct?

A. No, they were not.

{¶ 13} Kellar stated that he had also observed a forensic interview with the victim regarding her 2019 disclosure involving Weprin. According to Kellar, the victim recanted the allegation against Weprin then, stating that a different person, who was unknown to her, had sexually assaulted her, namely a "fat, bald man that was tall." The victim stated that the incident had occurred in a public restroom at a fireworks event in Beavercreek after the unknown man crawled under the bathroom stall while the victim was using the

bathroom. Kellar did not include the 2019 allegation against Weprin in the 2022 affidavit because, in 2019, "she said it was a completely different person. Therefore, the 2021 case was a new case" in which she made allegations that Weprin (a family member) had raped her. According to Kellar, after the victim recanted the 2019 allegations, that case was closed, and she had not recanted the 2021 allegations against Weprin.

{¶ 14} On cross-examination, Kellar stated that between the September 2021 forensic interview with the victim and February 11, 2022, when the search warrant was signed, additional information had been provided to him that was included in the affidavit. On redirect examination, Kellar stated that the victim had been removed from her family's home on September 21, 2021.

Applicable Law

{¶ 15} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16. "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d

586, 639 N.E.2d 498 (2d Dist.1994). "The application of the law to the trial court's findings of fact is subject to a de novo standard of review." *State v. Turner*, 2015-Ohio-4612, 48 N.E.3d 981, ¶ 10 (2d Dist.). *See also State v. Harrell*, 2024-Ohio-981, __ N.E.3d __, ¶ 25 (2d Dist.).

{¶ 16} "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized." *State v. Perez*, 2015-Ohio-1753, 32 N.E.3d 1010, ¶ 9 (2d Dist.), citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11. "Under Crim.R. 41, a request for a search warrant requires a sworn affidavit 'establishing the grounds for issuing the warrant.' " *State v. McClain*, 2015-Ohio-3690, 41 N.E.3d 871, ¶ 5 (2d Dist.), citing Crim.R. 41(C)(1). " 'The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.' " *Id.,* citing Crim.R. 41(C)(2). "Ordinarily, 'a probable cause inquiry must be confined to the four corners of the affidavit.' " *State v. Humphrey*, 2023-Ohio-1834, 216 N.E.3d 1834, ¶ 34 (2d Dist.), quoting *State v. Klosterman*, 114 Ohio App.3d 327, 332-333, 683 N.E.2d 100 (2d Dist.1996).

{¶ 17} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime

will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).    These circumstances include "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information."    *Id.*

{¶ 18} Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), "a search violates the Fourth Amendment if it is conducted pursuant to a warrant based on an affidavit containing one or more false statements and these misrepresentations were made knowingly or in reckless disregard of the truth."    *State v. Jones*, 2d Dist. Montgomery No. 29784, 2024-Ohio-683, ¶ 11.    " 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth." (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶ 12.

{¶ 19} "A search warrant affidavit that is facially sufficient may nevertheless be successfully attacked if the defendant can show by a preponderance of the evidence that the affiant made a false statement intentionally, or with reckless disregard for the truth." *State v. Stropkaj*, 2d Dist. Montgomery No. 18712, 2001 WL 1468905, *2 (Nov. 16, 2001), citing *Franks* at 155-56.    "Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' " (Citations omitted.) *Miser* at ¶ 12.    "[A]n omitted fact in an affidavit for a search warrant, in order to be considered intentionally misleading or made with reckless disregard of its tendency to mislead the magistrate, would necessarily have to be exculpatory information, or information that impeaches a source of incriminating information." *Stropkaj* at *3. " '[E]xcept in the *very* rare case where the defendant makes a strong preliminary

showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Emphasis sic.) *State v. Blaycock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15, quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir.1998).

{¶ 20} Finally, an "affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time," and no "arbitrary time limit dictates when information becomes 'stale.' " *State v. Maranger*, 2018-Ohio-1425, 110 N.E.3d 895, ¶ 36, citing *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991). "The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." *Id.,* citing *State v. Floyd*, 2d Dist. Darke No. 1389, 1996 WL 139787 (Mar. 29, 1996). "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Richardson*, 2d Dist. Greene No. 2011-CA-2, 2012-Ohio-1232 ¶ 11, citing *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 23. "If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband is still on the premises before the judge may issue a warrant." *Maranger,* citing *State v. Yanowitz*, 67 Ohio App.2d 141, 147, 426 N.E.2d 190 (8th

Dist.1980).

{¶ 21} We have observed that "pornographic images may be stored on computers or computer-related items for long periods of time." *State v. Hale,* 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, ¶ 40, citing *U.S. v. Frechette*, 583 F.3d 374 (6th Cir.2009). "[D]igital images of pornography are easily duplicated and have an infinite life span, being recoverable even after being deleted from a computer's hard drive. " *Id.* at ¶ 29, citing *Frechette* at 379.

{¶ 22} In *McClain*, 2015-Ohio-3690, 41 N.E.3d 871, we held that the "appellate standard under which a probable-cause finding is reviewed is deferential." *Id.* at ¶ 6, quoting *George,* 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus.

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.*

## The Affidavit

{¶ 23} The affidavit included the following information: Kellar was a sworn police officer with the State of Ohio and was employed with the Montgomery County Sheriff's Office, assigned to the Special Investigations Unit. He had been a peace officer since 1997, a Deputy Sheriff with Montgomery County Sheriff's Office since 2001, and a detective since 2008. Kellar had received specialized training in the investigations of violent crimes, sexually oriented crimes, internet crimes against children, child obscenity and exploitation, online social networking, and forensic interviewing of children, among other things. Kellar was assigned to Weprin's case on September 21, 2021, after it was reported that the victim asked a group of classmates if they had ever been raped by a particular family member, stating that she might find someone who was like her As noted above, the forensic interview occurred the following day.

{¶ 24} According to the affidavit, during that September 22, 2021 interview, the victim reported watching videos and viewing pictures on a pornographic website with Weprin on his cell phone. The victim described the sexual images she was shown and Weprin's masturbation, reporting that he had asked her if she would like to engage in sexual activity sometime with a friend of his. Because the victim was emotional and having difficulty relaying the allegations about Weprin during this interview, it was determined that she would continue counseling and therapy and be interviewed again at a later date.

{¶ 25} The affidavit stated that Kellar was then contacted on December 7, 2021,

by the victim's grandmother, who reported that the victim had stated that a matching pair of thong underwear, purchased for the victim by Weprin, was in her former bedroom at Weprin's home. The victim further reported that Weprin "used lubrication on her and did things in his bedroom and on the couch" while the victim's mother was sleeping.

{¶ 26} The affidavit stated that, on January 27, 2022, Kellar received records from the victim's counselor which reflected that between the initial disclosure in September 2021 and January 2022, the victim had made further disclosures. The victim reported being angry at her mother for remaining with Weprin, and that Weprin had made the victim "do the position '69' at their house * * * and licked her private part on several occasions." The victim further reported that Weprin "had tried to put his 'privates in my private,' " and she had pushed herself away from him because it hurt. The victim told her counselor that one of Weprin's friends named Kyle had messaged the victim on her tablet and asked to have sex with her. According to the affidavit, when the victim told Weprin about the message, he told the victim to be nice to Kyle. Kyle's sister, Stephanie, also contacted the victim and requested nude pictures of her, and the victim sent her one. The victim further disclosed "having a chat conversation on her tablet with them doing a foursome together." The affidavit requested a search warrant to locate any electronic devices, including "cellular telephones, tablets, computers, media storage, and clothing/ undergarments for further investigation."

{¶ 27} We cannot conclude that the trial court erred in overruling Weprin's motion to suppress. Kellar stated in the affidavit that he had extensive knowledge and experience uniquely suited to the facts herein. Based upon our deferential review, we

conclude that this was not a case in which Weprin made a strong preliminary showing that Kellar excluded information that was critical to the finding of probable cause with an intention to mislead the court. In other words, *Franks* was inapplicable. The court had a substantial basis for finding probable cause to believe that evidence of Weprin's crimes, including his cell phone, other electronic devices, and undergarments he had purchased for the victim would be found at his home. Further, the trial court reasonably found there was a substantial basis for believing that the sources of hearsay evidence were credible, as the victim disclosed to her counselor during therapy and to her grandmother. Most significantly, Kellar stated that the victim had not recanted her 2021 allegations against Weprin, only those made in 2019. Even if the prior recantation had been included in the affidavit, it was not exculpatory; in other words, the prior recantation would not have altered the finding of probable cause based on the lengthy and detailed allegations made in 2021 and 2022, which the victim did not recant.

{¶ 28} Finally, the trial court reasonably concluded that the information included in the affidavit was timely relative to the issuance of the warrant. The electronic items to be seized for pornographic content, as well as the undergarments, were consistent with the allegations against Weprin, nonperishable, and likely to have remained at his home as the victim described them. Given their digital nature, any pornographic images downloaded by Weprin likely remained on his electronic devices, even if he had attempted to delete them. Although the allegations initially surfaced in September 2021, the victim's subsequent disclosures strongly supported a conclusion that more than a single, isolated incident of sexual abuse had occurred. For the forgoing reasons, the trial court

reasonably concluded that the affidavit contained facts that supported a conclusion that the evidence sought was still on the premises. In other words, we cannot conclude that the trial court erred in finding that the information in the affidavit was not stale.

{¶ 29} Having found that the court had a substantial basis for finding probable cause for the issuance of the warrant, we need not address the good faith exception for an invalid warrant. Weprin's first assignment of error is overruled.

{¶ 30} Weprin's second assignment of error states:

THE TRIAL COURT FAILED TO PROPERLY ADVISE WEPRIN OF

HIS RIGHTS UNDER THE RE[A]GAN TOKES SENTENCING STATUTE.

{¶ 31} Weprin asserts that the trial court failed to comply with the Reagan Tokes Act, particularly R.C. 2929.19(B)(2)(c), which governs non-life indefinite prison terms, and that his sentence is contrary to law. The State concedes that the trial court failed to properly advise Weprin pursuant to R.C. 2929.19(B)(2)(c).

{¶ 32} "When reviewing felony sentences, a court of appeals must apply the standard of review set forth in R.C. 2953.08(G)." *State v. Williams*, 2d Dist. Greene No. 2021-CA-30, 2022-Ohio-2897, ¶ 18, citing *State v. Farra*, 2d Dist. Montgomery No. 28950, 2022-Ohio-1421, ¶ 73. Under that statute, an appellate court may increase, reduce, or modify a sentence, or vacate it altogether and remand for resentencing, if it "clearly and convincingly finds either (1) the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *State v. Worthen*, 2d Dist. Montgomery No. 29043, 2021-Ohio-2788, ¶ 13. This Court has recognized that a " 'sentence is contrary to law if a trial court sentences an offender to an indefinite prison

term under the Reagan Tokes Law and fails to advise the offender of all the notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing.' " *State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 29, quoting *State v. Massie*, 2d Dist. Clark No. 2020-CA-50, 2021-Ohio-3376, ¶ 18.

**{¶ 33}** R.C. 2929.19(B)(2)(c) requires a trial court imposing an indefinite sentence pursuant to the Reagan Tokes Act to notify the defendant of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned

early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 34} In Weprin's case, at sentencing, the court informed Weprin that he would be sentenced to 11 years on the rape. The court then asked Weprin if it had been explained to him what a Reagan Tokes law is. Weprin answered affirmatively. The court then stated:

So that means you take half of the 11 and add it on top. So it'll be 11 to 16-and-a-half, and that is going to be dependent upon what the authorities of the prison do. They're going to look at what you're doing, how you're doing, and they can tack on another three, four, or five, whatever they want to do, they can tack on if they want to.

{¶ 35} We agree with the parties that the trial court failed to comply with R.C. 2929.19(B)(2)(c) and that Weprin's sentence for rape is therefore contrary to law. We sustain Weprin's second assignment of error as to his indefinite prison term for rape.

{¶ 36} Weprin's third assignment of error states:

THE TRIAL COURT ERRED WHEN IT IMPOSED PRC [POST-RELEASE CONTROL].

{¶ 37} Weprin asserts that the court failed to inform him that the Adult Probation Department would monitor his period of post-release control (PCR) and of the term of imprisonment that could be imposed for a violation of PRC. The State again concedes error at sentencing regarding the imposition of post-release control.

{¶ 38} " 'It is settled that "a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing" and that "any sentence imposed without such notification is contrary to law." ' " (Citations omitted.) *State v. Heinzen*, 2d Dist. Clark No. 2019-CA-65, 2022-Ohio-1341, ¶ 24. "Per its statutory duty, '[t]he trial court must advise the offender at the sentencing hearing of the term of [post-release control] supervision, whether post-release control is discretionary or mandatory, and the consequences of violating post-release control.' " *Id.* at ¶ 25, quoting *State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 11. In *Heinzen*, the trial court failed to advise the defendant that "if she violated post-release control (other than by committing a felony offense) she could receive a prison term of up to one-half of the stated prison term originally imposed upon her." *Id.* at ¶ 27. Although the trial court included this information in its sentencing entry, it was not discussed at the sentencing hearing as required by R.C. 2929.19(B)(2)(f). As such, we found that the post-release control portion of Heinzen's sentence was contrary to law. *Id.*

{¶ 39} In Weprin's case, he was advised as follows regarding post-release control:

THE COURT:   So there's mandatory post release control for five, so when you get out, Mr. Weprin, you'll be on post release control.   That's what we call parole.   You'll be given a parole officer.   A parole officer will set rules that you have to abide by.   If you don't abide by them, they can make them worse, or send you back to prison; do you understand that?

THE DEFENDANT:   Yes, Your Honor.

**{¶ 40}** As in *Heinzen*, the court included the statutory information in its judgment entry of conviction but did not address at sentencing.   The post-release control portion of Weprin's sentence is contrary to law and must be reversed.   Weprin's third assignment of error is sustained.

**{¶ 41}** Having overruled Weprin's first assignment of error and sustained his second and third assignments of error, the judgment is reversed in part, and the matter is remanded to the trial court for resentencing for the limited purposes of properly advising Weprin pursuant to the Reagan Tokes Act and for the proper imposition of post-release control.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.