[Cite as *State v. Humphrey*, 2024-Ohio-2934.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29879 |
| | : | |
| v. | : | Trial Court Case Nos. 2020 CR 03714; |
| | : | 2020 CR 03896 |
| OCTAVIUS LAMONT HUMPHREY | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 2, 2024

. . . . . . . . . . .

OCTAVIUS LAMONT HUMPHREY, Pro Se Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Octavius Lamont Humphrey appeals from two judgments of the Montgomery County Common Pleas Court denying his petitions for postconviction relief. For the following reasons, we will affirm the judgments of the trial court.

## I. Facts and Procedural History

{¶ 2} On December 4, 2020, Humphrey was indicted in Montgomery C.P. No. 2020 CR 3714 on six counts of having weapons while under disability. On December 21, 2020, Humphrey was indicted in Montgomery C.P. No. 2020 CR 3896 on six counts of murder with firearm specifications, six counts of felonious assault with firearm specifications, and two counts of having weapons while under disability. On Humphrey's own motion, the trial court joined the two cases for trial.

{¶ 3} We previously detailed the evidence presented at Humphrey's trial when we resolved his direct appeal. *State v. Humphrey*, 2023-Ohio-1834 (2d Dist.). However, we will recite some of the facts here for purposes of clarity and convenience.

{¶ 4} The charges at issue stemmed from a triple homicide that occurred on the evening of November 24, 2020. At 5:48 p.m., a police dispatcher took part in an emergency phone call with Dontay Alston, who informed the dispatcher that he and two other people had been shot by a black male named "Mont" at 2654 North Gettysburg Avenue. By the time officers arrived at the locked home and forced entry, they discovered Alston deceased in the living room with two other deceased men, Michael Jackson and Justin Wilson. Large quantities of marijuana and cash were located inside the home. It was later determined that all three men were shot and killed by the same gun, a Glock .40 caliber pistol.

{¶ 5} Around the same time that police arrived at the house, Dalisa Mitchell, Jackson's fiancée, arrived at the home. She was taken to the police department and interviewed. Because police were trying to determine who "Mont" was, Mitchell

explained that she knew a "Mont" and a "Monte," who were two different people.

{¶ 6} Through various law enforcement channels, the police investigators learned of an individual named Monte Fleming who had been to 2654 North Gettysburg Avenue in the past and was Alston's cousin. The investigators also learned of an individual by the name of Octavius Lamont Humphrey, who was known by the nickname "Mont."

{¶ 7} Officers showed Mitchell a photospread of Fleming, whom she identified as someone she had seen at the home in the past. She testified at trial that Fleming was Alston's cousin and she had only seen him once outside the home on North Gettysburg Avenue. She had never known Fleming to use the nickname "Mont."

{¶ 8} A second photospread was shown to Mitchell, from which she identified Humphrey as "Mont." Mitchell testified at trial that she had known Humphrey for about 15 years and had always known him as "Mont," that other people also referred to him by that nickname, and that he had been to the North Gettysburg Avenue house on at least two occasions to purchase marijuana.

{¶ 9} In searching for information about Humphrey, officers learned that he had a black Buick car registered in his name and that 220 Morgan Avenue was a possible address for him. In the early morning hours of November 25, 2020, officers observed Humphrey's black Buick parked outside of 220 Morgan Avenue, which was approximately three miles away from the North Gettysburg Avenue address. Police surrounded the house and broadcasted for Humphrey to come out. Eventually, Humphrey exited the home and was arrested. Police recovered a cell phone in Humphrey's possession.

{¶ 10} Police obtained search warrants for both 2654 North Gettysburg Avenue

and 220 Morgan Avenue. Inside the Morgan Avenue home, officers found a second cell phone that belonged to Humphrey, as well as three operable firearms, none of which was the murder weapon. These three firearms were the basis of the having weapons while under disability charges in Case No. 2020 CR 3714. Officers also found marijuana in zip lock bags with green seals and cash bundled with distinctively colored rubber bands.

{¶ 11} Inside the residence at 2654 North Gettysburg Avenue, officers located zip lock bags with green seals and rubber bands similar to the ones found at Morgan Avenue. A firearm was found near Jackson's body, but it had not been fired and was not the murder weapon. Police also recovered three cell phones belonging to each of the three victims and nine .40 caliber casings.

{¶ 12} Subsequent cell-phone analysis established that one of Humphrey's cell phones was used to communicate with Justin Wilson prior to the murders and was near 2654 North Gettysburg Avenue at the time of the murders. Phone records indicated that Wilson and Humphrey had had three phone contacts between 5:02 p.m. and 5:38 p.m. on November 24, 2020. Wilson's last phone call to Humphrey's cell phone was at 5:38 p.m. At that time, the location of Humphrey's cell phone was consistent with being at or near 2654 North Gettysburg Avenue. Humphrey's cell phones were found to be moving away from the crime scene after Alston's 911 call at 5:48 p.m. No further contact occurred between Humphrey's phones and any of the decedents' phones following the murders. During a recorded jail call, Humphrey told his girlfriend that Wilson had called him the day of the murders. Humphrey also admitted to having been at 2654 North Gettysburg Avenue shortly before the shooting but denied having gone inside the house.

{¶ 13} In March 2022, as a result of a parole search, the murder weapon, a Glock .40 caliber pistol, was found in the home of an individual named William Clark. Investigators ultimately determined that Clark had not been involved in the shootings and that the gun may have been brought into his home by a female homeless drug addict.

{¶ 14} Following a jury trial, Humphrey was found guilty on all six counts of murder and all six counts of felonious assault, along with the accompanying firearm specifications. The two counts of having weapons while under disability in Case No. 2020 CR 3896 and the six counts of having weapons while under disability in Case No. 2020 CR 3714 were separately tried to the bench, and Humphrey was found guilty by the court of each of those offenses. After merging allied offenses, the trial court sentenced Humphrey to an aggregate term of 57 years to life in prison in Case No. 2020 CR 3896 and an aggregate term of 9 years in prison in Case No. 2020 CR 3714. The sentences were ordered to be served consecutively for a total term of 66 years to life in prison. Humphrey timely filed a direct appeal.

{¶ 15} Humphrey's appointed appellate counsel filed a brief challenging the sufficiency of the evidence and arguing that the convictions were against the manifest weight of the evidence. Humphrey asked this Court to strike his appointed counsel's brief, remove counsel, and allow him to proceed pro se. We granted Humphrey's request, and he filed a brief raising six assignments of error. The first two assignments of error challenged the legal sufficiency and manifest weight of the evidence. Humphrey's third assignment of error alleged prosecutorial misconduct. The fourth assignment of error argued that evidence should have been suppressed due to his illegal

arrest. His fifth assignment of error challenged the issuance of a search warrant for his home. The final assignment of error alleged ineffective assistance of trial counsel and identified ten different ways in which he believed his attorney had failed to represent him effectively. We rejected each of his arguments and affirmed the judgments of the trial court. *Humphrey*, 2023-Ohio-1834.

{¶ 16} On June 23, 2023, Humphrey filed a timely petition for postconviction relief in each of his cases, along with a motion to allow 30 days to amend his petition.[1] Humphrey also filed a motion to hire a private investigator and to appoint counsel to assist with his petition. Humphrey's original petition raised six separate claims. The first five claims alleged various ways in which trial counsel had been ineffective. The sixth claim alleged that an affidavit filed in the municipal court to establish probable cause to arrest him had been falsified.

{¶ 17} Humphrey subsequently filed an amended petition on July 5, 2023, which added 11 more claims. In addition to his previous six claims, Humphrey argued in his seventh claim that the trial court had violated his speedy trial rights. His eighth, twelfth, and fourteenth claims alleged additional ways in which trial counsel had been ineffective. In his ninth, thirteenth, and fifteenth claims, Humphrey alleged structural error and a due process violation based on the trial court's failure to provide him a competency hearing prior to trial. Humphrey's tenth and eleventh claims reasserted that the State had relied on the fabricated evidence in the municipal court affidavit and, further, that he had been indicted using this alleged fabricated evidence. In his sixteenth and seventeenth claims,

---

[1] Because most of Humphrey's filings were identical in each of his two cases, we will refer to his petitions and motions in the singular unless otherwise specified.

Humphrey argued that the trial court had abused its discretion in denying a motion in limine filed by the defense prior to trial. He also filed an affidavit in Case No. 2020 CR 3896 on July 17, 2023.

{¶ 18} The State did not file a response to any of Humphrey's petitions or motions. On July 25, 2023, the trial court denied Humphrey's petition and amended petition and overruled all his pending motions in their entirety without a hearing. The trial court found that most of Humphrey's claims were barred by res judicata because they either were or could have been raised in his direct appeal. The trial court further found that Humphrey had presented no substantive grounds for postconviction relief and determined that a hearing was unnecessary. Humphrey filed a timely notice of appeal in each case.

{¶ 19} Humphrey now raises 13 assignments of error related to the denial of his petitions. With the exception of the first and second assignments of error, Humphrey's arguments generally repeat the contentions made in his petitions before the trial court. Humphrey believes he presented sufficient evidence of substantive grounds for relief. Humphrey also argues that the trial court erred in applying res judicata because he submitted evidence outside the trial court record to support his claims. The grounds for Humphrey's alleged constitutional violations can generally be grouped into the following four categories: 1) he was denied his right to a competency hearing prior to trial; 2) his speedy trial rights were violated; 3) the police fabricated certain evidence used to convict him; and 4) he received ineffective assistance of trial counsel.

{¶ 20} The State responds that the trial court did not abuse its discretion in denying Humphrey's petition because all of Humphrey's claims were barred by res judicata and

he did not set forth sufficient operative facts to establish substantive grounds for relief.

{¶ 21} Following briefing, Humphrey filed a motion requesting that this Court take judicial notice of the record, exhibits, and docket, but there is no need to do so. On October 6, 2023, we ordered the clerk of the court of appeals to transfer to the record of this appeal the transcripts of proceedings, summary of docket, journal entries, and all original papers from Montgomery C.P. Nos. 2020 CR 3714 and 2020 CR 3896, which had previously been filed in Montgomery App. Nos. 29479 and 29480. Accordingly, Humphrey's motion is overruled.

## II. Applicable Law Regarding Petitions for Postconviction Relief

{¶ 22} "Pursuant to R.C. 2953.21(A)(1)(a), a convicted defendant who asserts a denial or infringement of constitutional rights sufficient to render his conviction void or voidable may file a petition asking the court that imposed sentence to vacate the judgment or sentence or to grant other relief." *State v. Hatton*, 2022-Ohio-3991, ¶ 37. "[A] postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). A petition for postconviction relief " 'is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction.' " *State v. Clark*, 2017-Ohio-120, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, ¶ 37 (10th Dist.).

{¶ 23} A petitioner is not automatically entitled to a hearing on a petition for postconviction relief. *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), citing *State v.*

*Jackson*, 64 Ohio St.2d 107, 110 (1980). In order to grant a hearing on a timely petition for postconviction relief, the trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). "In making that determination, the court must consider, in addition to the petition, the supporting affidavits, the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." *State v. Marcum*, 2023-Ohio-4058, ¶ 26 (2d Dist.), citing R.C. 2953.21(D). "R.C. 2953.21 imposes on a petitioner the initial burden to submit evidentiary documents containing operative facts sufficient to demonstrate substantive grounds for relief that merit a hearing." (Citations omitted.) *State v. Gapen*, 2005-Ohio-441, ¶ 21 (2d Dist.).

**{¶ 24}** "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *State v. Blanton*, 2022-Ohio-3985, ¶ 24, citing *State v. Milanovich*, 42 Ohio St.2d 46, 50 (1975) and R.C. 2953.21(F). "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *Gapen* at ¶ 21, citing *State v. Moreland*, 2000 WL 5933 (2d Dist. Jan. 7, 2000).

**{¶ 25}** "Res judicata is applicable in all postconviction relief proceedings." *State v. Szefcyk*, 77 Ohio St.3d 93, 95 (1996). "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which

resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). Generally, res judicata does not apply to a claim raised in a petition for postconviction relief that relies on evidence outside the record generated by the direct criminal proceedings. *State v. Monroe*, 2005-Ohio-5242, ¶ 9 (10th Dist.). "When the evidence a petitioner relies upon [is] dehors the record that evidence must meet a threshold of cogency." *State v. Hill*, 2005-Ohio-3176, ¶ 8 (2d Dist.), citing *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.1995). "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " *Id.*, quoting *Lawson* at 315.

{¶ 26} "[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion[.]" *State v. Gondor,* 2006-Ohio-6679, ¶ 58. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 2013-Ohio-966, ¶ 34.

### III. Findings of Fact and Conclusions of Law

{¶ 27} In his first assignment of error, Humphrey argues that the trial court erred by not making findings of fact and conclusions of law that addressed the evidence he submitted with his petition. Humphrey contends that the trial court did not specifically mention the various exhibits Humphrey included with his petition when the court denied it and that his exhibits were sufficient to obtain a hearing.

{¶ 28} It is clear from the record that the trial court considered both Humphrey's original petition and his amended petition and denied them. After addressing the facts

and procedural history and identifying the applicable law, the trial court concluded that most of the claims raised by Humphrey were either addressed in his direct appeal or could have been addressed in his direct appeal and were, therefore, precluded by res judicata. The trial court further found that there were no substantive grounds to grant postconviction relief and that a hearing was unnecessary.

{¶ 29} "The purpose of findings and conclusions are to apprise the petitioner of the grounds for the judgment of the trial court and to enable appellate courts to properly review the cause." *State v. Harris*, 1992 WL 190653, *5 (2d Dist. Aug. 13, 1992), citing *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19 (1988). "A trial court need not discuss every issue raised by appellant or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion." (Citation omitted.) *Calhoun*, 86 Ohio St.3d at 291-92. "If the trial court finds, on the facts of a case, that a petitioner's claim was fully litigated at trial or upon appeal, or that the claim could have been fully litigated in an appeal, the court can summarily dismiss the claim as barred by res judicata." *State v. Lester*, 41 Ohio St.2d 51, 55 (1975). "The determination of whether an issue is barred by res judicata largely involves a perusal of the facts of record, turning on such matters as the issues raised at trial and upon appeal, the availability of evidence and witnesses, and the jurisdiction of the trial court." *Id.*

{¶ 30} Based on our review of the record, we conclude the trial court's judgment sufficiently apprised Humphrey of the bases for the denial of his petition: res judicata and

failure to submit substantive grounds to warrant the relief requested. We also conclude that, for the reasons discussed below, the trial court did not abuse its discretion in denying Humphrey's petition without a hearing.

**{¶ 31}** Humphrey's first assignment of error is overruled.

### IV. Amendment Improperly Denied

**{¶ 32}** In his second assignment of error, Humphrey argues that the trial court erred in overruling his motion to amend his petition because he was permitted to file an amended petition under R.C. 2953.21. A petitioner has the right to amend a postconviction petition "with or without leave or prejudice to the proceedings" at any time before an answer or motion is filed by the State. R.C. 2953.21(G)(2). However, leave of court is required to amend a petition for postconviction relief any time after either an answer or motion is filed by the State. R.C. 2953.21(G)(3).

**{¶ 33}** "Trial courts have discretion to grant or deny leave to amend a postconviction-relief petition." *State v. Clark*, 2021-Ohio-2771, ¶ 28 (8th Dist.), citing *State v. Campbell*, 2014-Ohio-499, ¶ 19 (8th Dist.). "Absent an abuse of discretion, an appellate court will not disturb the grant or denial of leave to amend." *State v. Byrd*, 145 Ohio App.3d 318, 333 (1st Dist.2001).

**{¶ 34}** Humphrey is correct that the State did not file an answer or motion and, therefore, he could have amended his petition without leave of court. Although the trial court generally stated that it overruled all of Humphrey's pending motions, which necessarily included his motion for leave to amend his petition, the trial court fully considered and rejected the arguments contained in Humphrey's original petition and his

amended petition.   Thus, even if the trial court should not have overruled his motion for leave, there was no prejudice to Humphrey to warrant a reversal.   *State v. Smith*, 2020-Ohio-1370, ¶ 7-8 (1st Dist.).

{¶ 35} Humphrey's second assignment of error is overruled.

### V.    Competency Hearing

{¶ 36} In his third, fourth, and fifth assignments of error, Humphrey argues that his constitutional right to a competency hearing was violated before trial.   According to Humphrey, when his trial counsel raised the issue of competency during a pre-trial hearing on October 20, 2021, the trial court should have granted him a competency hearing.   Humphrey contends the trial court's failure to grant him a competency hearing violated his due process and equal protection rights and constituted structural error.

{¶ 37} In support of his claim, Humphrey cited to the transcript of an October 20, 2021 pre-trial hearing; he submitted an affidavit stating that his counsel had requested a competency evaluation at that hearing and contended that the record would show a competency hearing never took place.   Humphrey Affidavit (July 17, 2023). Humphrey's entire argument was that his counsel had requested a competency evaluation, he was entitled by statute to receive a competency evaluation, and the trial court failed to order one.   But Humphrey did not include evidence from outside the record to support his claims.

{¶ 38} The transcript of the October 20, 2021 hearing was included in Humphrey's original appeal and therefore was not evidence outside the record.   Likewise, Humphrey's affidavit, which merely attested to what was in the record, did not constitute

evidence dehors the record. *State v. Coleman*, 1993 WL 74756, *6 (1st Dist. Mar. 17, 1993). "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge*, 120 Ohio App.3d 122, 151 (2d Dist.1997), citing *State v. Moore*, 99 Ohio App.3d 748 (1st Dist.1994). Humphrey's argument regarding whether a competency determination should have occurred based on statements made at a pre-trial hearing could have been raised on direct appeal. Therefore, res judicata was a proper basis for dismissing these claims. *State v. Braden*, 2003-Ohio-2949, ¶ 31 (10th Dist.).

**{¶ 39}** Humphrey's third, fourth, and fifth assignments of error are overruled.

## VI.   Speedy Trial

**{¶ 40}** In his seventh assignment of error, Humphrey argues that his speedy trial rights were violated. The entirety of Humphrey's argument in support of this assignment of error is as follows:

> There was an order that vacated the Defendant's trial date while setting another date. (ex. 7,8) There was never any motion that was filed by counsel requesting a continuance. At a pretrial hearing that was held on January 26th 2022 a new trial date was set for February 7, 2022. Because there was never a motion to dismiss, as the motion to dismiss had already been overruled, the continuance was based on a fabrication. This resulted in the trial being delayed based on nothing. The trial court had no right to continue the trial for no reason, as no reason was stated on the record.

This violated the Defendant[']s speedy trial rights.

Appellant's Brief, p. 8-9.

{¶ 41} In support of this claim in his petition, Humphrey included the trial court's February 11, 2022 order, which vacated the February 7, 2022 trial date. He also submitted a document that appears to list some docket entries from Case No. 2020 CR 3714, the origin of which is unclear. Humphrey does not address how the trial court erred in overruling this claim or support his argument with citations to any authorities or statutes. Rather, his entire argument is based on the premise that he never filed a motion to dismiss that necessitated a continuance of the trial. Humphrey's argument is belied by the record.

{¶ 42} On October 27, 2021, the trial court issued an order of appearance for a final pre-trial hearing on January 26, 2022, and a trial date of February 7, 2022. On December 3, 2021, Humphrey filed a motion to dismiss on speedy trial grounds. The trial court overruled that motion on January 25, 2022. A final pre-trial hearing was held on January 26, 2022, in preparation for the previously scheduled February 7, 2022 jury trial.

{¶ 43} On February 1, 2022, however, Humphrey filed a motion to dismiss based on alleged discovery violations and requested a hearing. Although the cases were consolidated, the motion to dismiss was only filed in Case No. 2020 CR 3896, which explains why the docket in Case No. 2020 CR 3714 does not reflect the filing of a motion to dismiss. On February 11, 2022, the trial court issued an order in both cases stating that, "[a]t the request of Defendant Octavius Lamont Humphrey and his counsel in order

to prosecute Mr. Humphrey's pending Motion to Dismiss, the February 7, 2022 trial date is hereby VACATED, and with the agreement of Mr. Humphrey and his counsel, a new trial date herein is scheduled for April 18, 2022 with the final pretrial on April 6, 2022." Order Vacating Trial Date, Setting New Trial Date (Feb. 11, 2022). The timing of this order, four days *after* the trial was scheduled to occur, implies that the parties were aware the trial was being continued. The trial court overruled the February 1, 2022 motion to dismiss on April 7, 2022. Accordingly, the record clearly established that the continuance of the trial was not "based on a fabrication" but rather was based on an agreement of the parties necessitated by Humphrey's motion to dismiss filed days before the scheduled trial.

{¶ 44} Moreover, Humphrey could have raised this claim in his direct appeal, because it could have been determined based entirely on evidence in the record. The doctrine of res judicata applies to bar applicants from asserting a violation of their speedy trial rights where they could have raised the issue on direct appeal. *State v. Moore*, 2008-Ohio-5376, ¶ 9 (2d Dist.), citing *Perry*, 10 Ohio St.2d at 180. Accordingly, the trial court did not abuse its discretion in denying Humphrey's petition without a hearing on this claim.

{¶ 45} Humphrey's seventh assignment of error is overruled.

**VII.    Fabricated Evidence**

{¶ 46} Humphrey's ninth, tenth, and thirteenth assignments of error relate to alleged "fabricated evidence" that he argues affected his constitutional right to due process and a fair trial. These assignments of error state the following:

Assignment of Error Nine: The State committed structural error by forwarding fabricated evidence to the prosecutor that was disclosed in discovery.

Assignment of Error Ten: The Defendant was indicted using fabricated evidence. This violated the Appellants right to due process found in the Fourteenth Amendment to the United States Constitution.

Assignment of Error Thirteen: The police manufactured fabricated evidence and gave it to the prosecuting attorney violating the Appellant's Fourteenth Amendment rights to due process and his Sixth Amendment right to a fair trial.

**{¶ 47}** In order to better understand Humphrey's arguments, a review of the history of the case is necessary. Humphrey was arrested on November 25, 2020. Initially, Humphrey was charged in the Dayton Municipal Court and held in custody on charges of having weapons while under disability for the three firearms recovered from 220 Morgan Avenue. The municipal court case was dismissed when Humphrey was indicted on December 4, 2020, in Case No. 2020 CR 3714. Bond on that case was set at $100,000. Humphrey posted bond and was released from jail on or about December 10, 2020.

**{¶ 48}** On December 11, 2020, Humphrey was re-arrested and charged in the Dayton Municipal Court for the three murders and related offenses. These charges were dismissed when Humphrey was indicted in Case No. 2020 CR 3896 on December 21, 2020.

**{¶ 49}** In order for the State to re-arrest Humphrey, a complaint and an affidavit

requesting the issuance of an arrest warrant had to be filed in the Dayton Municipal Court. Humphrey's claims relate to the affidavit filed in the Dayton Municipal Court requesting the arrest warrant that was related to the murder charges. In support of his claims, Humphrey included a copy of the Dayton Municipal Court affidavit and portions of what appears to be an inventory list for a Dayton Police report, neither of which was part of the original record of the case. According to the affidavit, after police were alerted to the homicides that occurred at 2654 North Gettysburg Avenue, the Dayton Police Homicide Unit located Humphrey at 220 Morgan Avenue and arrested him. The affidavit stated, in part, that "[i]nside the [220 Morgan Avenue] residence we locate (sic) .40 caliber ammo same ammo as the casings located at 2654 N Gettysburg Ave." Petitioner's Ex. 5. According to Humphrey, this information must have been falsified because the brand of ammunition found at 220 Morgan Avenue (Fiocchi) was not the same brand as the casings found at 2654 North Gettysburg Avenue (Federal, Hornady, and Speer). He further asserted that "[t]he trial proceeded under the fabrication the defendant possessed the same brand ammunition found at the scene of the crimes." Motion Amending Post Conviction Petition to Add Additional Claims (July 5, 2023), p. 4. On appeal, he contends "[t]he trial continued under the premise the same ammunition found at the Defendant's residence was the same ammunition at the crime scene. The results of this fabrication are unquantifiable and indeterminant." Appellant's Brief, p. 10. Even accepting Humphrey's documents as true, the trial court did not abuse its discretion in concluding that Humphrey did not set forth substantive grounds for relief for these claims.

{¶ 50} According to Humphrey, officers located nine .40 caliber casings at the

scene of the homicide and .40 caliber cartridges at 220 Morgan Avenue. The nine .40 caliber casings recovered from 2654 North Gettysburg Avenue were three different brands of ammunition: three Federal, three Hornady, and three Speer. The .40 caliber cartridges recovered from 220 Morgan Avenue, on the other hand, were Fiocchi brand. Humphrey claims that the police falsified the affidavit by stating that the brand of cartridges recovered from 220 Morgan Avenue was the same brand of ammunition as the casings recovered from 2654 North Gettysburg Avenue.

{¶ 51} Contrary to Humphrey's allegations, the affidavit did not state that the cartridges and casings were the same *brand* of ammunition. Rather, the affidavit indicated that the same *caliber* ammunition was found at both locations. There was nothing false about that statement. Further, the State did not introduce at trial any evidence that .40 caliber ammunition was found at 220 Morgan Avenue. Thus, not only was there no evidence of fabrication, but Humphrey's allegation that the State had relied upon the "fabricated" evidence to convict him was contradicted by the record. Because Humphrey did not present substantive grounds for relief, the trial court's denial of his petition on these grounds was not an abuse of discretion.

{¶ 52} Humphrey's ninth, tenth, and thirteenth assignments of error are overruled.

### VIII. Ineffective Assistance of Counsel

{¶ 53} In his sixth, eighth, eleventh, and twelfth assignments of error, Humphrey claims that his trial counsel was ineffective. Humphrey argues his counsel performed deficiently in the following respects: (1) by failing to request a competency hearing; (2) by

not emphasizing certain evidence at trial; (3) by stipulating to the 911 call; and (4) by failing to investigate impeachment evidence. In support of his ineffective assistance of counsel claims, Humphrey submitted various pages of a police report and a single-page document identified in handwriting at the top as "D. ALSTON PHONE RECORDS," none of which were part of the record on direct appeal. As explained below, the trial court did not abuse its discretion by denying Humphrey's petitions for postconviction relief on all his claims of ineffective assistance of counsel.

### A. Ineffective Assistance of Counsel Standards

{¶ 54} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107 (1980), syllabus. Accordingly, a petitioner "must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *State v. Bunch*, 2022-Ohio-4723, ¶ 26, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). For prejudice to be found, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. "The failure to make a showing of either deficient performance or

prejudice defeats a claim of ineffective assistance of counsel." *State v. Hartman*, 2017-Ohio-7933, ¶ 31 (2d Dist.), citing *Strickland* at 697.

**{¶ 55}** Because a petition for postconviction relief relies on facts and evidence from outside the record, the introduction of evidence dehors the record of ineffective assistance of counsel is generally sufficient to avoid dismissal on the basis of res judicata. *Cole*, 2 Ohio St.3d at 114. Nevertheless, "simply overcoming the res judicata bar through the introduction of evidence outside the record is not sufficient to entitle the petitioner to a hearing." *Blanton*, 2022-Ohio-3985, at ¶ 31. Rather, a petitioner must proffer evidence "which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner]." *Cole* at 114. The Ohio Supreme Court explained that courts should use a two-part inquiry to determine whether a petitioner who brings forth evidence from outside the record of ineffective assistance of counsel is entitled to a hearing. *Blanton* at ¶ 33-34, citing *Cole*. First, the court must determine whether the petitioner has introduced "competent evidence of ineffective assistance" that was not included in the trial court record. *Id.* at ¶ 33. If so, the court must then determine whether that evidence presents substantive grounds for relief, "that is, if believed, would the newly presented evidence—together with any evidence in the trial record—establish that counsel was ineffective?" *Id.* The Supreme Court advised that these two inquiries should be treated as analytically distinct. *Id.* at ¶ 34.

### B. Counsel's Failure to Obtain a Competency Hearing

**{¶ 56}** In his sixth assignment of error, Humphrey argues that his attorney was

ineffective for failing to follow up on his request for a competency evaluation after the October 20, 2021 pre-trial hearing. In support of his claim, he points to the transcript of the October 20, 2021 pre-trial hearing, not for the proposition that it demonstrated any indicia of incompetency, but rather to show that counsel recommended that a competency evaluation should be done and that none was conducted.

**{¶ 57}** Humphrey's conclusory allegations in his petition for postconviction relief did not include any facts or evidence from outside the record to support this claim. Rather, Humphrey relied solely on the evidence in the record: the transcript from the October 20, 2021 pre-trial hearing and the fact that no competency hearing was reflected in the record. Because Humphrey failed to set forth any evidence from outside the record to support an ineffective assistance of counsel claim on this basis, the trial court correctly found that the matters raised in this claim were barred by the doctrine of res judicata and summarily denied the petition.

**{¶ 58}** Humphrey's sixth assignment of error is overruled.

### C. Counsel's Failure to Emphasize Certain Evidence at Trial

**{¶ 59}** Humphrey asserts in his eighth assignment of error that counsel was ineffective at trial for failing to emphasize certain evidence that Humphrey claims would have changed the outcome of the trial. In particular, he argues his counsel should have emphasized that 1) the murder weapon did not belong to him and was not found in his possession, and 2) the ammunition casings found at the scene of the homicide were not the same brand of ammunition that was found at his home.

**{¶ 60}** Humphrey first argues that counsel was ineffective for not emphasizing to

the jury that the gun that was the murder weapon did not belong to him and was not found in his possession. In support of this claim, Humphrey cited a police report that discussed an email between Jessica Morrison and William Clark in which Morrison claimed ownership of the weapon. But the jury was well aware of the circumstances surrounding the discovery of the murder weapon. The State presented evidence at trial that, several months after the murders occurred, the murder weapon was discovered at 167 Oxford Avenue in Dayton, Ohio. The homeowner, William Clark, was interviewed by police about the firearm, which was presented to the jury. State's Ex. 136. Clark denied knowing anything about the firearm and stated that he had been informed by email that Morrison and her boyfriend claimed they had brought the firearm to Clark's residence. At trial, defense counsel attempted to admit a copy of the email from Morrison to Clark into evidence. Defendant's Ex. FF. Although the trial court refused to admit it, the jury was informed through the testimony of Detective Zachary Farkas that there was an email providing that information. Moreover, defense counsel argued during closing argument that the murder weapon had been found hidden in someone else's home several months after the homicide and that Morrison had claimed ownership of the gun. Tr. 1011. Accordingly, the jury was aware of the circumstances surrounding the discovery of the murder weapon and that it was not found in Humphrey's possession. Because this argument could have been raised on direct appeal, as the facts and evidence upon which Humphrey relied were contained within the record, it was properly denied.

{¶ 61} We likewise reject Humphrey's complaint that counsel should have emphasized that he had had a different brand of .40 caliber ammunition at his home. In

support of this claim, Humphrey submitted the affidavit filed in the municipal court requesting the arrest warrant and a portion of an inventory list for a Dayton Police report. However, even if believed, this evidence did not present substantive grounds for relief.

{¶ 62} The evidence in the record established that three firearms were found at 220 Morgan Avenue, none of which were identified as capable of firing .40 caliber ammunition. The fact that .40 caliber ammunition was found at 220 Morgan Avenue would raise an obvious question: "where is the gun that can fire the .40 caliber ammunition?" As the testimony at trial demonstrated, the brand of ammunition has no bearing on whether a firearm can fire that ammunition. The relevant consideration is the caliber of ammunition. Because the murder weapon that killed all three of the victims fired .40 caliber ammunition, the caliber was far more important and incriminating than the brand of the ammunition. As mentioned previously, the State did not present evidence of any .40 caliber ammunition found at 220 Morgan Avenue. Had defense counsel brought up that .40 caliber cartridges were found at 220 Morgan Avenue, this could have been devastating to Humphrey's defense. The idea that defense counsel would want to emphasize that .40 caliber ammunition was found at 220 Morgan Avenue (the same caliber as the murder weapon), while no gun capable of firing a .40 caliber cartridge was found there, merely to show that it was a different brand of ammunition, seems counterintuitive.

{¶ 63} Moreover, it appears that defense counsel's choice not to introduce that evidence was part of a reasonable trial strategy. At trial, defense counsel argued in closing that there were three different brands of .40 caliber ammunition shot from the

murder weapon: Hornady, Speer, and Federal. He then argued that the jury "Did not hear about a single Hornady, Speer, or Federal brand or .40 caliber bullet found on Mr. Humphrey, found in his car, found in the home that they searched; not one. Not a .40 caliber, not the brand, nothing." Tr. 1010. Counsel could not have made this argument if he had introduced into evidence the .40 caliber ammunition found at 220 Morgan Avenue.

{¶ 64} Trial counsel is entitled to a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *State v. Thompson*, 33 Ohio St.3d 1, 10 (1987). We cannot conclude that Humphrey presented substantive grounds for relief to support his claim that trial counsel was ineffective in not emphasizing at trial that .40 caliber ammunition was found at Humphrey's residence shortly after three victims were murdered by someone with a gun using .40 caliber ammunition, particularly when the State never introduced the .40 caliber ammunition found at his home.

{¶ 65} Accordingly, we conclude that Humphrey failed to submit any evidence outside the record that, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to Humphrey. Thus, the trial court did not abuse its discretion in denying Humphrey's petition without a hearing on these grounds.

{¶ 66} Humphrey's eighth assignment of error is overruled.

### D. Defense Counsel's Stipulation

{¶ 67} In his eleventh assignment of error, Humphrey claims his trial counsel was

ineffective in stipulating to the 911 call. He alleges that, if counsel had fully investigated the call, then counsel would not have stipulated to it at trial. In support of this claim, Humphrey submitted a document purporting to be Alston's phone records from the day of the homicide along with various pages of a Dayton Police report.

{¶ 68} By all accounts, Humphrey's trial counsel had the documents Humphrey attached to his petition in support of this claim. There is no indication that trial counsel "failed to investigate" by not obtaining or considering the same documents. Rather, the record establishes that defense counsel investigated the authenticity of the 911 call prior to trial, including hiring an expert to evaluate the metadata of the 911 call. Motion to Compel (Sep. 29, 2021); Motion for Expert Funds (Nov. 11, 2021); Entry Granting Expert Funds (Nov. 15, 2021); Tr. 33-35; 57-58; 65-66.

{¶ 69} Although Humphrey submitted documents outside the record in support of his claim, this evidence was not exculpatory and did not provide any substantive grounds for relief. Even if Humphrey's trial counsel had done the investigation Humphrey believes he should have done, such an investigation would not have prevented the State from presenting evidence that it was Alston's voice on the 911 call.

{¶ 70} The only stipulation made at trial regarding the 911 call was that the voice on the 911 call was Alston's voice. There was no stipulation as to the authenticity or admissibility of the 911 call. Rather, the State presented testimony of the records custodian for the Montgomery County Regional Dispatch Center to authenticate the recorded call and records associated with the call. On the second day of trial, immediately prior to entering the stipulation that the recorded call contained Alston's

voice, the prosecution informed the trial court that it had a witness who was going to be called specifically to identify Alston's voice on the 911 call. However, that morning, defense counsel agreed to stipulate that the voice on the call was Alston. Tr. 411-412. Although the stipulation was not put into writing, the oral stipulation was made in open court and placed on the record. Neither the alleged phone records nor the police reports would have affected the State's presenting evidence that Alston's voice was on the recorded call. Had defense counsel declined to stipulate to the evidence, the State's witness would presumably have testified to the identity of Alston's voice on the 911 call. Moreover, it was a reasonable trial strategy to stipulate to the voice identification rather than drawing additional attention to it and possibly garnering more sympathy for the victim. Nothing about this stipulation reflects deficient performance by defense counsel or that Humphrey was prejudiced by defense counsel's stipulation to the identification of Alston's voice on the 911 call. Accordingly, the trial court did not abuse its discretion in denying Humphrey's petition without a hearing on these grounds.

**{¶ 71}** Humphrey's eleventh assignment of error is overruled.

### E. Impeachment Evidence

**{¶ 72}** Finally, in his twelfth assignment of error, Humphrey argues his counsel was ineffective for failing to investigate impeachment evidence and to impeach the prosecution's witnesses. According to Humphrey, his counsel should have impeached the investigating officer by asking why officers needed to use GPS to find 2654 North Gettysburg Avenue and why they canvassed the area when the 911 caller had clearly identified the address of the shooting. Humphrey implies that the 911 call must have

been fabricated because, if the 911 call actually had been made, the police would have known exactly where to go. Thus, he suggests that if counsel had impeached the officer, the jury would have questioned the authenticity of the 911 call. In support of this argument, Humphrey highlights portions of police reports indicating that a hearsay statement was made that officers used GPS to locate the scene of the shooting and that officers canvassed the area. This evidence did not meet a "threshold of cogency" because, at best, it was marginally significant and did not advance Humphrey's claim of fabricated evidence beyond mere hypotheses. *Hill*, 2005-Ohio-3176, at ¶ 8, quoting *Lawson*, 103 Ohio App.3d at 315.

{¶ 73} As in his eleventh assignment of error, Humphrey's trial counsel possessed the documents Humphrey attached to his petition in support of this claim. There is no indication that trial counsel failed to investigate the documents on which Humphrey relied. Moreover, Humphrey's speculative argument that counsel "failed to investigate ways to impeach" the State's witnesses was purely conclusory and did not support any substantive grounds for relief.

{¶ 74} Humphrey points to the testimony of Officer David Denlinger, the first responding Dayton Police Officer, to show that counsel should have impeached him about the GPS and canvassing. Officer Denlinger testified that he was dispatched to 2654 North Gettysburg Avenue, an address he had not been to previously. When he arrived on the scene, he "began to canvass the area for the caller-in or any victims * * * in or around the location that we were given." Tr. 495. He did not find anyone outside the home, so he went up to the house, knocked, and announced himself at the front door.

He did not get any response, and other officers did not get a response from the side door. Additional officers arrived on the scene, and they again started to canvass the area but did not find anything. Tr. 497. Eventually, Officer Denlinger went to a window in the front of the home and observed a person lying on the floor inside. Only then did officers determine that they needed to force entry into the home.

{¶ 75} Although an address was provided, the 911 call did not identify if the three people who had been shot were inside or outside the house. It is to be expected that officers would canvass the area surrounding a location involving in a triple homicide, as evidence could potentially be found inside or outside the immediate area of the shooting. Had defense counsel questioned Officer Denlinger about the canvassing done by officers outside the home, it would not reasonably have changed the outcome of the trial. Likewise, whether officers used GPS to locate 2654 North Gettysburg Avenue was not material to the case and would not have affected the outcome. As Detective Farkas testified at trial, when officers are on the scene, they do not immediately have access to the 911 call or dispatch records. Therefore, it is not unreasonable for officers to be unaware of all the specific contents of the 911 call itself, particularly while they are in the process of responding to an emergency call and still on scene.

{¶ 76} But even if counsel was deficient in failing to cross-examine the responding officer about the GPS or canvassing, Humphrey failed to establish prejudice under *Strickland*. The facts that officers used GPS to locate 2654 North Gettysburg Avenue or canvassed the area after arriving were neither material nor exculpatory. Moreover, the idea that questioning the officers about those topics would have led a jury to conclude

that the 911 call was fabricated was purely speculative, especially given the credible evidence in the record that the 911 call did occur and given the fact that the jury already had before it evidence that the police officers had canvassed the location where the 911 call originated. Accordingly, Humphrey did not submit evidentiary documents containing operative facts sufficient to demonstrate a lack of competent counsel or that he was prejudiced by counsel's alleged ineffectiveness. Therefore, the trial court did not abuse its discretion in denying Humphrey's petition without a hearing on this claim.

**{¶ 77}** Humphrey's twelfth assignment of error is overruled.

## IX. Conclusion

**{¶ 78}** Having overruled all of Humphrey's assignments of error, we affirm the judgments of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.